# EXHIBIT B

# TAKEOVER AGREEMENT

WHEREAS, the United States Air Force (hereinafter "Air Force") entered into a contract with Tri Gems Builders, Inc, (hereinafter "Tri Gems") in connection with a contract entitled "Replace Overhead Electric Falcon Courts North, McGuire AFB, New Jersey," which is Contract Number F28609-96-C0003, the contract, including Modifications 1 through 5, and all related specifications, drawings and incorporated provisions, (hereinafter "Contract") at McGuire Air Force Base in New Jersey; and

WHEREAS, United States Fire Insurance Company (hereinafter "U.S. Fire") issued a Performance Bond in connection with completion of the Contract, a copy of which Bond is annexed hereto as Exhibit "A" and incorporated herein; and

WHEREAS, on February 24, 1999, the Air Force terminated Tri Gems for default in connection with the Contract and, thereafter, made demand upon U.S. Fire to complete the Contract; and

WHEREAS, U.S. Fire contends that it possesses various defenses and/or affirmative claims against the Air Force in connection with said contract, including, but not limited to overpayment to Tri Gems, failure to mitigate damages and lack of cooperation and U.S. Fire intends to pursue its claims as against the Air Force; and

WHEREAS, based upon both U.S. Fire and the Air Force reserving all of their respective rights to any and all defenses and claims, U.S. Fire has decided to undertake, and the Air Force has agreed to such undertaking, completion of the outstanding work with respect to the Contract pursuant to the terms and conditions of the Contract, except as modified by this agreement, set forth herein;

NOW, THREREFORE, it is hereby agreed this 29 day of January, 2001 as follows:

1. U.S. Fire hereby agrees to perform or cause to be performed all of the remaining items of work necessary to complete the Contract in accordance with the terms of the Contract documents which include the relevant specifications (the remaining work is hereinafter referred to as "Remaining Work"). The Air Force agrees that nothing in this Agreement is intended to increase the liability of the Surety in excess of the penal sum of the Performance Bond and that all payments properly made by Surety for the completion of the work to any person or entity on account of the work covered by the Contract shall be deemed to be payment under Surety's Performance Bond and shall reduce the penal sum of the Performance Bond in an equal amount. However, the Surety has a duty to proceed with performance in accordance with FAR Clause 52.233-1 as incorporated into the contract.

2. Air Force represents and warrants to U.S. Fire that for Contract Number F28609-96-C0003 the original contract amount awarded was Not to Exceed $1,202,800.00, with modifications for additional work totaling $281,396.00, with a total contract price of Not To Exceed $1,484,196.00. Liquidated Damages were assessed from 16 Dec 99 through 24 Feb 99 (404 days at $90.00/day) totaling $36,360.00. According to DFAS, Dayton OH records, monies are available in the amount of $198,642.61 which does not include the deduction of $36,360.00 for liquidated damages. The total amount available remaining on this contract is $162,282.61. The Air Force agrees that the remaining funds will be used for the completion of the Remaining Work by U.S. Fire. The completing contractor (hereinafter Completing Contractor) will complete the work within 210 calendar days of the date hereof. In the event that the work is not completed by that completion date, the Air Force

retains the right to then assess liquidated damages in accordance with the Contract as to the additional days needed to complete the work after the 210 calendar day completion date.

3. Air Force and U.S. Fire agree that the satisfactory completion of the Remaining Work shall satisfy U.S. Fire's performance obligations under this Takeover Agreement and under the aforesaid Performance Bond. Air Force and U.S. Fire agree to cooperate fully with each other in connection with the completion of the Remaining Work.

4. U.S. Fire has contracted or will contract with Eastern Construction and Electric, Inc. as the Completing Contractor to assist U.S. Fire in the completion of the Remaining Work. The Air Force agrees to accept payment requisitions from, and in the name of, said firm on behalf of U.S. Fire and to pay directly to U.S. Fire all sums which are payable under the terms of the Contract. Payment will be made on a progress payment basis by determining the percentage of contract performance in relation to the balance of funds held by the Air Force. Should U.S. Fire determine that a change in Completing Contractor is necessary, U.S. Fire will notify the Air Force ten days prior to making any change, at which time the Air Force has the right to object to any completing contractor change. No change will be made until the Air Force's objections are resolved. The Air Force will not unreasonably object to U.S. Fire changing completing contractor.

5. The Air Force agrees to pay U.S. Fire the balance of the contract price unpaid at the time of this Agreement, but not in excess of U.S. Fire's costs and expenses, in the manner provided by the Contract subject to the following conditions:

a. Any unpaid earnings of Tri Gems, including retained percentages and progress estimates for work accomplished prior to default, shall be subject to debts due the Air Force by Tri Gems, except to the extent that such unpaid earnings may be required to permit payment to U.S. Fire of its actual costs and expenses incurred in the completion of the work, exclusive of its payments and obligations under the payment bond given in connection with the Contract.

b. The Air Force retains and intends to exercise its right, as set forth in Section F-20 of the contract, to assess liquidated damages for delays in completion of work after the Contract completion date of 30 Sep 01, except to the extent that such delays may be excused under the contract provisions, and U.S. Fire does not waive any right with respect thereto.

c. In no event shall U.S. Fire be entitled to be paid any amount in excess of its total expenditures necessarily made in completing the work and discharging its liabilities under the payment bond of Tri Gems. Furthermore, payments to U.S. Fire to reimburse it for discharging its liabilities under the payment bond of Tri Gems shall be only on authority of (1) mutual agreement between the Air Force, and U.S. Fire, or (2) determination of the Comptroller General of the United States as to payee and amount, or (3) order of a court of competent jurisdiction.

d. Submittal of SF1413 for all subcontractors (hereinafter Subcontractors) to U.S. Fire is to ensure that all subcontractors are qualified, duly licensed in their trade and have required permits will be given to the Air Force prior to the start of work.

6. Completing Contractor and/or any other Subcontractors shall furnish and keep in full force and effect all insurance required by the Contract in the form required thereunder and shall, in addition, deliver to U.S. Fire a certificate showing that U.S. Fire and all parties as originally required in the Contract are named as additional insureds on each and every insurance policy so required and that the Air Force is entitled to receive

notice of cancellation thereof. Said insurance certificates will be delivered to the Air Force. U.S. Fire Insurance shall have no obligation to furnish any insurance under this Agreement but shall ensure that the Completing Contractor and/or any other Subcontractors shall furnish to the Air Force and keep in full force and effect all insurance required by the Contract.

7. Routine day-to-day performance of the Contract in accordance with the Specifications, Drawings and Modifications will be the responsibility of the Completing Contractor. If the Completing Contractor or Subcontractors deviate from the Specifications, Drawings and Modifications without prior approval of the Contracting Officer, the Air Force has the right to withhold payment. U.S. Fire will not have any representatives on the job site and is not acting as a contractor under this Agreement, but instead is acting in its capacity as a performance bond surety.

8. Notwithstanding any provision hereof and/or set forth in the Contract, Air Force and U.S. Fire each reserve the right to decide whether or not to agree that additional work, or work considered to be changed from the requirements at the time of execution of this Agreement, and/or additional or changed materials be provided. If the Air Force and U.S. Fire both agree, then the applicable provisions of the Contract documents shall be modified accordingly. The Air Force will attempt to reach agreement on all changes, but, under the Changes Clause, retains the right to issue a unilateral modification if agreement is not reached. The Parties expressly reserve all rights to any additional change orders not yet approved and to negotiate further additions, deletions, change orders and extensions of time, as provided in the Contract.

9. Notwithstanding anything contained herein or in the Contract Performance Bond or elsewhere, it is agreed and understood that U.S. Fire is proceeding to take over and complete the Contract under a full and complete reservation of rights. The Air Force and U.S. Fire agree that claims will be processed in good faith in accordance with the Disputes Clause of the Contract, Part 33 of the FAR and any other applicable laws.

10. Except as expressly modified herein, Air Force shall have all rights, obligations and responsibilities under the Contract with respect to U.S. Fire as Air Force had with respect to Tri Gems and U.S. Fire shall have all rights, obligations and responsibilities as Tri Gems had with respect to Air Force under the aforesaid Contract.

11. Nothing in this Agreement shall be deemed to create any rights in favor of, or to inure to the benefit of, any third party or parties.

12. This Takeover Agreement shall binding upon the successors and assigns of the Parties hereto and cannot be modified except in a writing executed by the parties hereto.

13. U.S. Fire agrees to complete the Remaining Work within 210 calendar days of the date hereof, provided, however, that for any excusable delay caused after execution hereof, appropriate extensions of the time will be negotiated and provided to U.S. Fire in accordance with the provisions of the Contract. The Air Force reserves the right to terminate for failure to make progress in accordance with the terms of the Contract.

14. Any notice required to be made under the terms of this Takeover Agreement and/or the Contract shall be deemed made if either party mails such notice by first class mail, postage prepaid, as follows:

FOR AIR FORCE:
LINDA I. WILLIAMS, CONTRACTING OFFICER
305 CONS/LGCB
2402 VANDENBERG AVENUE
MC GUIRE AFB, NJ 08641-1712

COPY TO:
MONICA HELTZ,
CONTRACTING OFFICER
305 CONS/LGCB
2402 VANDENBERG AVENUE
MC GUIRE AFB, NJ 08641-1712

FOR U.S. FIRE:
BRUCE K DICKSTEIN, ESQ.
CLAIMS ADMINISTRATOR
UNIVERSAL BONDING INSURANCE COMPANY
518 STUYVESANT AVENUE
P.O. BOX 615
LYNDHURST, NJ 07071-0615

COPY FOR:
DAVID C. DREIFUSS, ESQ.
NAGEL, RICE, DREIFUSS & MAZIE, LLP
301 SOUTH LIVINGSTON AVENUE, SUITE 201
LIVINGSTON, NJ 07039

15. This Takeover Agreement and all performance hereunder, shall be governed by and construed in accordance with the laws of the United States of America.

16. This Takeover Agreement constitutes the entire agreement between the Air Force and U.S. Fire and supercedes any and all prior agreements, arrangements, and/or understandings by and between the parties. Except as herein modified, all terms and conditions of the Contract shall remain unchanged and in full force and effect.

17. By signing this Takeover Agreement, the representatives of the parties hereto warrant and represent that they are properly authorized to enter into this Takeover Agreement.

Witness

_______________

UNITED STATES AIR FORCE

By: Kathleen DeVito
CONTRACTING OFFICER

Dated: 29 January 2001

Witness

UNITED STATES FIRE INSURANCE COMPANY

By: ______________________
BRUCE DICKSTEIN

Dated: 2/22/01

# EXHIBIT C

# Universal Bonding Insurance Company

Lyndhurst, New Jersey

## GENERAL INDEMNITY AGREEMENT

THIS AGREEMENT of Indemnity, made and entered into this 14th day of May 1993, is executed by the undersigned for the purpose of indemnifying UNIVERSAL BONDING INSURANCE COMPANY as hereinafter mentioned in connection with any Bonds written on behalf of: Tri-Gem's Builders, Inc. "And all its subsidiaries or affiliated companies presently in existance or hereinafter added."

of: 74 Route #73 South, Cedar Brook, N.J. 08018 (mailing-POB 144 Sicklerville, N.J. 08081)

(address)

herein referred to as the "Principal."

NOW THEREFORE, should the Company execute or procure the execution of the suretyship for which application is now pending, or which may be hereafter applied for, or other suretyship in lieu thereof, or in lieu of suretyship now outstanding, or in connection therewith, the undersigned, hereinafter called the Indemnitor, does (if there be more than one indemnitor, they jointly and severally and for each other do), in consideration thereof, hereby undertake and agree:

1. **PREMIUM.** That the Indemnitor will pay, or cause to be paid, to the Company, as and when each and every such bond or obligation is executed, the premium therefore in accordance with the regular scheduled rates of the Company then in force, and annually thereafter (except when the initial premium is scheduled as a term premium) pay to the Company the annual premium therefor in accordance with such rates until the Indemnitor shall serve upon the Company competent, written, legal evidence satisfactory to the Company of its final discharge from such suretyship and any and all renewals and extensions thereof.

2. **PERFORMANCE.** That the Indemnitor will perform all the conditions of each said bond or obligation, and any and all alterations, modifications, renewals, continuations, and extensions thereof, and will at all times indemnify and save the Company harmless from and against every claim, demand, liability, loss, cost, charge, counsel fee, payable on demand of Surety, whether actually incurred or not, (including fees of special counsel whenever by the Company deemed necessary) expense, suit, order judgement and adjudication whatsoever, and any and all liability therefor, sustained or incurred by the Company by reason of having executed or procured the execution of said bonds or obligations, and will place the Company in funds to meet same before it shall be required to make payment, and in case the Indemnitor requests the Company to join in the prosecution or defense of any legal proceeding, the Indemnitor will, on demand of the Company, place it in funds sufficient to defray all expenses and all judgements that may be rendered therein.

3. **INDEMNITY.** The Indemnitor and his successors agree to indemnify and save harmless the Surety from and against any and all demands, liabilities, loss, costs, damages or expenses of whatever nature or kind, including fees of attorneys and all other expenses, including but not limited to cost and fees of investigation, adjustment of claims, procuring or attempting to procure the discharge of such bonds and in attempting to recover losses or expenses from the indemnitors or third parties, whether the Surety shall have paid out any such sums or any part thereof or not and premiums on Bonds issued by the Surety on behalf of the Principal.

In furtherance of such indemnity:

A. Surety shall have the right in its sole discretion to determine whether any claims shall be paid, compromised, defended, prosecuted or appealed.

B. Surety shall have the right to incur such expenses in handling a claim as it shall deem necessary, including but not limited to the expense for investigative, accounting, engineering and legal services.

C. Surety shall have the foregoing rights, irrespective of the fact that the Undersigned may have assumed, or offered to assume, the defense of the Surety upon such claim.

D. In any claim or suit hereunder, an itemized statement of the aforesaid loss and expense, sworn to by an officer of Surety, or the vouchers or other evidence of disbursement by Surety, shall be prima facie evidence of the fact and extent of the liability hereunder of the Undersigned.

E. Surety shall have the right to reimbursement of its expenses, premiums and attorneys' fees hereunder, irrespective of of expenses, premiums and attorneys' fees hereunder, irrespective of whether any bond loss payment has been made by Surety. In any suit on this Agreement, Surety may recover its further expenses and attorneys' fees incurred in such suit.

4. DEFAULT

Principal shall be in Default with respect to a Contract, and hereunder if any of the following occur:

A. Principal breaches, abandons or repudiates any Contract.

B. Any Obligee declares Principal to be in Default.

C. Principal fails to pay for any labor or materials when such payment is due.

D. Principal diverts any Contract funds from one Contract to another, prior to the complete discharge of surety.

E. Principal, or any of the Undersigned, breaches any provision of this Agreement.

F. Principal, or any one of the Undersigned, becomes the subject of any Agreement or proceedings of composition, insolvency, bankruptcy, receivership, trusteeship, or assignment for creditors.

G. Principal, if an individual, dies, is adjudged mentally incompetent, convicted of a felony, becomes a fugitive from justice or disappears and cannot be located with usual methods.

5. REMEDIES UPON DEFAULT

In the event of Default, as defined above, Surety may at its option and sole discretion:

A. Take over any Contract and arrange for its completion.

B. Take possession of the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any Contract.

C. Take possession of the office equipment, [illegible] and records of Principal as are necessary for completion of any Contract.

D. Loan such funds, guarantee a loan for such funds, as Surety shall deem necessary for the completion of any Contract and for the discharge of Surety in connection with any Contract. Repayment of such loan shall be covered by the indemnity hereunder.

E. File an immediate suit to enforce the provisions of this Agreement.

**6. COLLATERAL SECURITY**

If a claim is made against Surety, or if Surety deems it necessary to establish a reserve for potential claims, and upon demand from Surety, the Undersigned shall deposit with Surety cash or other property acceptable to Surety, as collateral security, in sufficient amount to protect the Surety with respect to such claim or potential claims and any expense or attorneys' fees. Such collateral may be held by Surety until it has received evidence of its complete discharge from such claim or potential claims, and until it has been fully reimbursed for all loss, expense and attorneys' fees.

**7. ASSIGNMENT**

As security for the performance of all of the provisions of this agreement, the Undersigned hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond or bonds, but only in the event of Default referred to in preceding Section 5):

A. All rights in connection with any Contract, including but not limited thereto:

1. All subcontracts let in connection therewith and such subcontractors' surety bonds.
2. All machinery, plant, equipment, tools which shall be upon the site or sites of the work or elsewhere for the purposes of the contracts, including all materials ordered for the contracts.
3. Any and all sums due or which may thereafter become due under said contracts and all sums due or to become due on all other contracts, bonded or unbonded, in which any or all of the Undersigned have an interest.
4. All rights arising out of insurance policies.

**8. POWER OF ATTORNEY.** The Undersigned hereby irrevocably nominate, constitute, appoint and designate the Surety or its designee as their attorney-in-fact with the right, but not the obligation, to exercise all of the rights assigned, transferred and set over to the Surety by the Undersigned in this Agreement, and to make, execute and deliver any and all additional or other assignments, documents or papers, including but not limited to the execution of instruments referred to in Section 6, and the endorsement of checks or other instruments representing payment of Contract monies deemed necessary and proper by the Surety in order to give full effect, not only to the intent and meaning of the within assignment, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Undersigned hereby ratify and affirm all acts and actions taken and done by the Surety or its designee as attorney-in-fact.

**9. GENERAL PROVISIONS**

A. The obligations of the Undersigned hereunder are joint and several. Surety may bring separate suits hereunder against any or all of the Undersigned as causes of action may accrue hereunder. Surety need not proceed first against the Principal.

B. Undersigned will, on request of Surety, procure the discharge of Surety from any Bond, and all liability by reason thereof.

C. Undersigned warrant that each of them is specifically and beneficially interested in the obtaining of each Bond.

D. Undersigned waive notice of any Default, the making of a claim against Surety or Surety's loaning funds to Principal.

E. Undersigned agrees to give to Surety prompt notice of any facts which might give rise to any claims or suits against Surety upon any Bond.

F. Surety shall have the right, at its option and in its sole discretion, to decline execution of any Bond, including a final Bond where it has furnished a bid Bond.

G. Surety may consent to any changes or alterations in a Contract, without affecting the liability hereunder of the Undersigned.

H. Surety shall have every right, defense or remedy which a personal surety without compensation would have, including the right of exoneration.

I. Until Surety shall have been furnished with conclusive evidence of its discharge without loss from any Bonds, and until Surety has been otherwise fully indemnified as hereunder provided, Surety shall have the right to free access to the books, records and accounts of the Undersigned for the purpose of examining and copying them. Undersigned hereby authorize third parties, including but not limited to depositories of funds of the Undersigned, to furnish to Surety any information requested by Surety in connection with any transaction. Surety may furnish any information, which it now has or may hereafter acquire concerning the Undersigned, to other persons, firms or entities for the purpose of procuring co-suretyship or reinsurance or of advising such persons, firms, or entities as it may deem appropriate.

J. Undersigned waive all right to claim any property, including homestead, as exempt from legal process in any action hereunder.

K. If the execution hereof by any of the Undersigned may be defective or invalid for any reason, such defect or invalidity shall not affect the validity hereof as to any other of the Undersigned. Invalidity of any provision hereof by reason of the law of any state to any other reason shall not render the other provisions hereof invalid.

L. The Surety may, at its option, file or record this Agreement or any other document executed by any or all of the Undersigned, individually or jointly, in connection with application, issuance or execution of any bond or bonds coming within the scope of this instrument, as a security agreement or as part of a financing statement or as a notice of its prior interest and assignment under the provisions of the Uniform Commercial Code or any other statute, ordinance or regulation of any jurisdiction or agency, but the filing or recording of such document shall be solely at the option of the Surety and the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement.

M. The Surety shall have the right to fill in any blanks left herein and to correct any errors in filling in any blanks herein.

N. The Undersigned waive any defense that this instrument was executed subsequent to the date of any such bond, admitting and covenanting that such bond was executed pursuant to the Undersigneds' request and in reliance on the Undersigneds' promise to execute this instrument.

O. This agreement may not be changed or modified orally. No change or modification shall be effective unless specifically agreed in writing.

P. That in the event any of the Undersigned shall fail to execute this instrument or become insolvent, or in case any of the Undersigned, who execute this agreement, shall not be bound for any reason, the other Undersigned shall, nevertheless, be bound hereunder for the full amount of the liability as aforesaid.

Q. That repeated actions on this instrument, as breaches thereof may occur, may be maintained by Surety, its successors or assigns, without any former action operating as a bar to any subsequent action brought on this instrument for breaches hereunder.

R. Wherever used in this instrument the plural shall include the singular and the singular shall include the plural, as the circumstances require.

S. The liability of the Undersigned hereunder shall not be affected by the failure of the Principal to sign any bond or bonds or by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity or the return or exchange of any collateral, that may have been obtained.

10. **TERMINATION.** This agreement is a continuing obligation of the Undersigned unless terminated by written notice to Surety as hereinafter provided, and such termination as to an Undersigned shall in no way affect the obligation of any other Undersigned who has not given such notice. The liability of the Undersigned hereunder as to future Bonds or Principal shall not terminate by reason of the failure of Surety to disclose facts known or learned by Surety about the Principal, even though such facts materially increase the risk beyond that which the Undersigned might intend to assume. Surety may have reason to believe such facts are unknown to the Undersigned, and Surety may have reasonable opportunity to communicate such facts to the Undersigned; and the Undersigned hereby waive notice of such facts. In order to terminate liability as to future Bonds of Principal, and Undersigned must:

A. Give written notice to Surety at its Home Office, Lyndhurst, New Jersey, of such termination; and

B. State in such notice the effective date (not less than thirty days after receipt thereof by Surety) of termination of such Undersigneds' liability to future Bonds.

After the effective date of such termination, the Undersigneds' giving notice shall nonetheless be liable hereunder for:

A. Bonds executed or authorized prior to such date, and renewals, substitutions and extensions thereof; and

B. Bonds executed pursuant to a bid or proposal Bond executed or authorized prior to such date; and renewals, substitutions and extensions thereof; and

C. Any maintenance or guarantee Bonds executed incidental to any other Bond executed prior to such date, and renewals, substitutuions and extensions thereof.

11. **DEFINITIONS.** The following definitions apply in this agreement:

**Bond** - Any contractual obligation undertaken by Surety for Principal, before or after the date of this Agreement, and any renewal or extension of said obligation.

**Principal** - The person or entity set forth above or any one of combination thereof, or their successors in interest, whether alone or in joint venture with others named herein or not.

**Surety** - UNIVERSAL BONDING INSURANCE COMPANY, its reinsurers, and any other person or entity which the surety may procure to act as Surety or co-surety on any bond or any other person or entity who executes any bond at its request.

**Contract** - Any agreement of Principal, the performance of which is bonded by the surety.

"Indemnitor" or pronouns referring to said word appearing in this agreement, whether singular or plural, are to be construed as referring to the iNdemnitor, though the Indemnitor be one or more individuals, partnerships, associations or corporations.

UNIVERSAL BONDING INSURANCE COMPANY
GENERAL INDEMNITY AGREEMENT - SIGNATURE GUARANTEE PAGE

SIGNATURE GUARANTEED
FIRST FIDELITY BANK, NA, NEW JERSEY

BY Kathy J Banach

TITLE Asst V. P.

Tri-Gem's Builders, Inc.
Firm Name
By [signature]
(Signature) Title (Date)
Gothrie Short, Jr. President
PO Box 144, Sicklerville, N.J. 08081
Business Address

Corporate Seal

SIGNATURE GUARANTEED
FIRST FIDELITY BANK, NA, NEW JERSEY

BY Kathy J Banach

TITLE Asst. V P.

Tri-Gem's Builders, Inc.
Firm Name
By [signature]
(Signature) Title (Date)
Jason D. Griffin V. Pres./Secty-Treas.
PO Box 144, Sicklerville, N.J. 08081
Business Address

Corporate Seal

Firm Name
By ____________________
(Signature) Title (Date)

Business Address

Corporate Seal

UNIVERSAL BONDING INSURANCE COMPANY

GENERAL INDEMNITY AGREEMENT – SIGNATURE GUARANTEE PAGE

Bank Signature Guarantee

Gothrie Short, Jr. — (Signature) Individual Indemnitor — 5-14-93 (Date)

1 Arborwood Lane, Sicklerville, N.J. 08081
Residence Address

SIGNATURE GUARANTEED
FIRST FIDELITY BANK, N.A., NEW JERSEY
ELLISBURG
BY Kathy O'Banad Asst V P
AUTHORIZED SIGNATURE

Willie Mae Short — (Signature) Spouse Indemnitor — 5-14-93 (Date)

SIGNATURE GUARANTEED
FIRST FIDELITY BANK, N.A., NEW JERSEY
ELLISBURG
BY Kathy O'Banad Asst V P
AUTHORIZED SIGNATURE

Jason D. Griffin — (Signature) Individual Indemnitor — 5-14-93 (Date)

7 18th Street, Burlington, N.J. 08016
Residence Address

SIGNATURE GUARANTEED
FIRST FIDELITY BANK, N.A., NEW JERSEY
ELLISBURG
BY Kathy O'Banad Asst V P
AUTHORIZED SIGNATURE

Lois E. Griffin — (Signature) Spouse Indemnitor — 5-14-93 (Date)

SIGNATURE GUARANTEED
FIRST FIDELITY BANK, N.A., NEW JERSEY
ELLISBURG
BY Kathy O'Banad Asst V.P.
AUTHORIZED SIGNATURE

(Signature) Individual Indemnitor (Date)

Residence Address

(Signature) Spouse Indemnitor (Date)

(Signature) Individual Indemnitor (Date)

Residence Address

(Signature) Spouse Indemnitor (Date)

(Signature) Individual Indemnitor (Date)

Residence Address

(Signature) Spouse Indemnitor (Date)

# Universal Bonding Insurance Company

Lyndhurst, New Jersey

## MASTER SURETY AGREEMENT

### RESOLUTION AND CERTIFICATION

**WHEREAS,** the President and Vice President/Secretary-Treasurer of this Corporation have executed a certain GENERAL INDEMNITY AGREEMENT in favor of UNIVERSAL BONDING INSURANCE CO., dated ______________, 19______, protecting it in connection with its assuming suretyship as more fully described therein, said GENERAL INDEMNITY AGREEMENT having been read at this meeting and fully considered and approved by the directors present; and

**WHEREAS,** the said GENERAL INDEMNITY AGREEMENT has been accepted by UNIVERSAL BONDING INSURANCE CO. upon the warranty of the said officers that this Corporation has such an interest in said suretyship as to empower it to make said GENERAL INDEMNITY AGREEMENT.

**NOW, THEREFORE, BE IT RESOLVED,** that the acts of the said officers in executing the GENERAL INDEMNITY AGREEMENT on behalf of this Corporation be, and they are hereby, unanimously ratified and confirmed as the acts of this Corporation.

**BE IT FURTHER RESOLVED** that the aforesaid warranty that this Corproation has such an interest in said suretyship as to empower it to make said GENERAL INDEMNITY AGREEMENT be, and it is hereby, ratified and confirmed as the warranty of this Corporation.

I hereby certify that I am President of Tri-Gem's Builders, Inc. that the above Resolution is a true and accurate copy of a resolution unanimously adopted by the Board of Directors at a meeting duly called and held on the 14 day of MAY, 1993, in the office of the said Corporation, at which meeting a quorum of the Directors were present.

**IN WITNESS WHEREOF** I have hereunto set my hand and the corporate seal of the Corporation, this 14 day of MAY, 1993.

(AFFIX CORPORATE SEAL)

[signature]
Gothrie Short, Jr. (President)

FORM #UB-006 (5/89) (3M)