# In the United States Court of Federal Claims

**No. 03-2811C**

**FILED: July 30, 2004**

| | | |
|---|---|---|
| * * * * * * * * * * * * * * | * | |
| **UNITED STATES FIRE INSURANCE COMPANY,** | * | **Motion to Dismiss; Jurisdiction; Surety Claim; Doctrine of Equitable Subrogation.** |
| **Plaintiff,** | * | |
| **v.** | * | |
| **UNITED STATES,** | * | |
| **Defendant.** | * | |
| * * * * * * * * * * * * * * | * | |

**DAVID C. DREIFUSS**, Dreifuss, Bonacci & Parker, LLP, Florham Park, N.J., for the plaintiff.

**CHRISTIAN J. MORAN**, Trial Attorney; **ROBERT E. KIRSCHMAN, JR.**, Assistant Director; **DAVID M. COHEN**, Director, Commercial Litigation Branch, Civil Division; **PETER D. KEISLER**, Assistant Attorney General, United States Department of Justice, for the defendant. **MAJOR GRAEME S. HENDERSON**, Department of the Air Force, of counsel.

## O P I N I O N

**HORN, J.**

## FINDINGS OF FACT

The plaintiff, United States Fire Insurance Company (U.S. Fire), provides surety bonds for construction companies. The Miller Act, 40 U.S.C. § 3131 (2000), states that, on contracts over $100,000.00, a contractor performing "construction, alteration, or repair of any public building or public work of the Federal Government" must post two types of bonds. First, the contractor must post a "performance bond with a surety . . . in an amount . . . adequate, for the protection of the Government" against contractor defaults. 40 U.S.C. § 3131(b)(1). Second, the contractor must post a "payment bond with a surety . . . for the protection of all persons supplying labor and material in carrying out the work . . . ." 40 U.S.C. § 3131(b)(2).

On October 26, 1995, the government awarded Tri-Gems a contract to perform construction work on a project at McGuire Air Force Base, New Jersey, titled "Replace Overhead Power Distribution," with a not-to-exceed price of $1,202,800.00. The parties later adjusted the contract, by change order, to a not-to-exceed price of $1,484,196.00. While U.S. Fire provided both performance and payment bonds for Tri-Gems on their construction work, only the performance bond is at issue before this court.

The Air Force made progress payments to Tri-Gems upon receipt of the contractor's work invoices. On May 19, 1998, the Air Force Civil Engineering Office issued an interim report containing estimates that Tri-Gems had been paid eighty-six percent of the contract value, while the project was only sixty percent completed. Furthermore, the Air Force Civil Engineering Office found that approximately one-third of the completed work needed to be repaired or reworked because of Tri-Gems' poor workmanship.

On February 24, 1999, the Air Force terminated the contract with Tri-Gems for default. U.S. Fire alleges that the Air Force made improper payments to Tri-Gems of $394,911.79 for work not performed and $296,839.20 for work improperly performed, totaling $691,750.99. According to the plaintiff, the payments occurred both before and after the May 19,1998, interim report that estimated Tri-Gems had been paid eighty-six percent of the contract value for less than sixty percent of the work.

On January 29, 2001, the Air Force entered into a takeover agreement with U.S. Fire, the surety, to complete the project. At the time when the takeover agreement was signed, the Air Force had already paid Tri-Gems $1,285,429.39. After contract deductions of $36,484.00, the amount remaining on the $1,484,196.00 contract was identified in the takeover agreement as $162,282.61. U.S. Fire solicited bids to complete the work, but also reserved the right to seek damages regarding the alleged overpayments to Tri-Gems. In this regard, the takeover agreement between the Air Force and U.S. Fire stated, "U.S. Fire contends that it possesses . . . claims against the Air Force . . . not limited to overpayment to Tri Gems [sic], failure to mitigate damages and lack of cooperation and U.S. Fire intends to pursue its claims as against the Air Force . . . . [B]oth U.S. Fire and the Air Force reserv[e] all of their respective rights to any and all defenses and claims . . . ."

U.S. Fire alleges that the Air Force depleted available contract funds by improperly making payments to Tri-Gems for improperly performed work and by making payments before work was completed. The surety alleges that the contract funds remaining after Tri-Gems' default were insufficient because the defendant did not pay funds in proportion to the work actually completed, as U.S. Fire claims was a contract requirement. In the final decision denying the plaintiff's administrative claims, the contracting officer noted, however, that (1) under the contract, Tri-Gems, not the government, was responsible for ensuring that work was completed in accordance with the terms of the contract; (2) prior to receiving progress payments, Tri-Gems certified that the work was performed in accordance with the terms of the

contract and (3) if it was discovered that the work was performed improperly, Tri-Gems (and thus U.S. Fire, as the surety) was required to correct the defective work without additional compensation. The plaintiff seeks compensatory damages arising from the alleged overpayment to Tri-Gems by the Air Force, which U.S. Fire asserts should have been retained as collateral for use by the surety upon the contractor's default. U.S. Fire also seeks pre-judgment interest and costs.

After completing the necessary repair and unfinished work following the default by Tri-Gems, U.S. Fire submitted a claim to the Air Force contracting officer, asking for $930,000.00 -- the alleged cost of completion paid by U.S. Fire to the completion contractor, Eastern Construction & Electric, Inc. (Eastern).[1] On April 30, 2003, the contracting officer denied the entire claim. The reasons given by the contracting officer for denying the claim were that (1) the claim was not based on the Contract Disputes Act, 41 U.S.C. § 601-613 (2000), and that at the time of the alleged overpayments, there was no contract between U.S. Fire and the government; (2) Federal Acquisition Regulations (FAR) clauses provide that the contractor and its surety are responsible for identifying and correcting defective work, without additional compensation; (3) while bidding out the completion contract, U.S. Fire erroneously relied on the May 19, 1998, Air Force Civil Engineering Office interim report, issued by someone other than a contracting officer, which misreported conditions as being worse than they really were and (4) "other accounting deficiencies," which suggest that the completion contractor may have made an unusually large profit.

## DISCUSSION

The defendant has filed a motion requesting dismissal of U.S. Fire's complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims (RCFC). Subject matter jurisdiction may be challenged at any time by the parties, by the court <u>sua sponte</u>, and even on appeal. <u>Fanning, Phillips, Molnar v. West</u>, 160 F.3d 717, 720 (Fed. Cir. 1998) (quoting <u>Booth v. United States</u>, 990 F.2d 617, 620 (Fed. Cir.), <u>reh'g denied</u> (1993)); <u>United States v. Newport News Shipbuilding and Dry Dock Co.</u>, 933 F.2d 996, 998 n.1 (Fed. Cir. 1991). A plaintiff must establish jurisdiction by a preponderance of the evidence. <u>Reynolds v. Army and Air Force Exch. Serv.</u>, 846 F.2d 746, 748 (Fed. Cir. 1988); <u>Thomas v. United States</u>, 56 Fed. Cl. 112, 115 (2003); <u>Martinez v. United States</u>, 48 Fed. Cl. 851, 857 (2001), <u>aff'd in part</u>, 281 F.3d 1376 (Fed. Cir.), <u>reh'g denied</u> (2002); <u>Bowen v. United States</u>, 49 Fed. Cl. at 675; <u>Vanalco, Inc. v. United States</u>, 48 Fed. Cl. 68, 73 (2000); <u>Alaska v. United States</u>, 32 Fed. Cl. 689, 695 (1995), <u>appeal dismissed</u>, 86 F.3d 1178 (Fed.

---

[1] The $930,000.00 amount includes the $691,750.99 paid to Tri-Gems for work allegedly not performed, or performed improperly, which funds U.S. Fire alleges should have been retained as collateral and made available to the surety for the completion of the contract upon Tri-Gems' default, and additional money for "doing work above the bond penal sum" (for work not included in the original bonded contract).

Cir. 1996) (table). When construing the pleadings pursuant to a motion to dismiss, the court should grant the motion only if "it appears beyond doubt that [the plaintiff] can prove no set of facts in support of [the] claim which would entitle [the plaintiff] to relief." Davis v. Monroe County Bd. of Educ., 526 U.S. 629, 654 (1999) (quoting Conley v. Gibson, 355 U.S. 41, 46 (1957)); Brubaker Amusement Co. v. United States, 304 F.3d 1349, 1355 (Fed. Cir. 2002), cert. denied sub nom. Penn Triple S v. United States, 538 U.S. 921 (2003); Leider v. United States, 301 F.3d 1290, 1295 (Fed. Cir.), reh'g denied, reh'g en banc declined (2002), cert. denied, 538 U.S. 978 (2003); Conti v. United States, 291 F.3d 1334, 1338 (Fed. Cir. 2002), cert. denied, 537 U.S. 1112 (2003); Consol. Edison Co. v. O'Leary, 117 F.3d 538, 542 (Fed. Cir. 1997), cert. denied sub nom. Consol. Edison Co. v. Pena, 522 U.S. 1108 (1998); see also New Valley Corp. v. United States, 119 F.3d 1576, 1579 (Fed. Cir.), reh'g denied, reh'g en banc declined (1997); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d 1166, 1169 (Fed. Cir.), cert. denied, 516 U.S. 820 (1995); Hamlet v. United States, 873 F.2d 1414, 1416 (Fed. Cir. 1989), cert. denied, 517 U.S. 1155 (1996); W.R. Cooper Gen. Contractor, Inc. v. United States, 843 F.2d 1362, 1364 (Fed. Cir. 1988) ("When the facts alleged in the complaint reveal 'any possible basis on which the non-movant might prevail, the motion must be denied.'"); RCS Enters., Inc. v. United States, 46 Fed. Cl. 509, 513 (2000).

Pursuant to RCFC 8(a)(1) and Rule 8(a)(1) of the Federal Rules of Civil Procedure, a plaintiff need only state in the complaint "a short and plain statement of the grounds upon which the court's jurisdiction depends." RCFC 8(a)(1). However, "[d]etermination of jurisdiction starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." Holley v. United States, 124 F.3d 1462, 1465 (Fed. Cir.), reh'g denied (1997) (citing Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1 (1983)). Nevertheless, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981), aff'd, 460 U.S. 325 (1983); Bradley v. Chiron Corp., 136 F.3d 1317, 1322 (Fed. Cir. 1998) ("Conclusory allegations of law and unwarranted inferences of fact do not suffice to support a claim.").

When deciding a motion to dismiss based on a lack of subject matter jurisdiction, this court must assume that all undisputed facts alleged in the complaint are true and must draw all reasonable inferences in the non-movant's favor. See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Conley v. Gibson, 355 U.S. at 45-46; Boise Cascade Corp. v. United States, 296 F.3d 1339, 1343 (Fed. Cir. 2002), cert. denied, 538 U.S. 906 (2003); Pixton v. B & B Plastics, Inc., 291 F.3d 1324, 1326 (Fed. Cir. 2002); Commonwealth Edison Co. v. United States, 271 F.3d 1327, 1338 (Fed. Cir. 2001) (quoting New Valley Corp. v. United States, 119 F.3d at 1580), cert. denied, 535 U.S. 1096 (2002); Boyle v. United States, 200 F.3d 1369, 1372 (Fed. Cir. 2000); Perez v. United States, 156 F.3d 1366, 1370 (Fed. Cir. 1998); Highland Falls-Fort Montgomery Cent. School Dist. v. United States, 48 F.3d at 1167 (citing Gould, Inc. v. United States, 935 F.2d 1271, 1274 (Fed. Cir. 1991)); Henke v. United States, 60 F.3d 795, 797 (Fed. Cir. 1995); Hamlet v. United States, 873 F.2d at 1416; Ho v. United States, 49 Fed. Cl. 96, 100 (2001), aff'd, 30 Fed. Appx. 964 (Fed. Cir. 2002); Alaska v. United States, 32 Fed.

Cl. at 695. If a defendant or the court challenges jurisdiction or plaintiff's claim for relief, however, the plaintiff cannot rely merely on allegations in the complaint, but must instead bring forth relevant, competent proof to establish jurisdiction. McNutt v. Gen. Motors Acceptance Corp. of Ind., 298 U.S. at 189; see also Land v. Dollar, 330 U.S. 731, 735 n.4 (1947); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d at 747; Catellus Dev. Corp. v. United States, 31 Fed. Cl. at 404-05. When considering a motion to dismiss for lack of subject matter jurisdiction, the court may examine relevant evidence in order to resolve any factual disputes. See Moyer v. United States, 190 F.3d 1314, 1318 (Fed. Cir. 1999); Reynolds v. Army and Air Force Exch. Serv., 846 F.2d at 747; see also Cedars-Sinai Med. Ctr. v. Watkins, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings, including affidavits and deposition testimony."), cert. denied, 512 U.S. 1235 (1994); Vanalco v. United States, 48 Fed. Cl. at 73 ("If the truth of the alleged jurisdictional facts is challenged in a motion to dismiss, the court may consider relevant evidence to resolve the factual dispute.").

In order for this court to have jurisdiction over a plaintiff's complaint, the Tucker Act requires that the plaintiff identify an independent substantive right enforceable against the United States for money damages. 28 U.S.C. § 1491. The Tucker Act states:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1). As interpreted by the United States Supreme Court, this Act waives sovereign immunity to allow jurisdiction over claims (1) founded on an express or implied contract with the United States, (2) seeking a refund from a prior payment made to the government or (3) based on federal constitutional, statutory, or regulatory law mandating compensation by the federal government for damages sustained. See United States v. Testan, 424 U.S. 392, 400, reh'g denied, 425 U.S. 957 (1976) (citing Eastport Steamship Corp. v. United States, 178 Ct. Cl. 599, 605-06, 372 F.2d 1002, 1009 (1967)); see also Palmer v. United States, 168 F.3d 1310, 1314 (Fed. Cir. 1999); Stinson, Lyons & Bustamante, P.A. v. United States, 33 Fed. Cl. 474, 478 (1995), aff'd, 79 F.3d 136 (Fed. Cir. 1996). A waiver of traditional sovereign immunity cannot be implied but must be "unequivocally expressed." INS v. St. Cyr, 533 U.S. 289, 299 n.10 (2001); United States v. Nordic Village, Inc., 503 U.S. 30, 33 (1992); Ins. Co. of the West v. United States, 243 F.3d 1367, 1372 (Fed. Cir.), reh'g denied, reh'g en banc declined (2001); Saraco v. United States, 61 F.3d 863, 864 (Fed. Cir. 1995) (quoting United States v. King, 395 U.S. 1, 4 (1969)), cert. denied, 517 U.S. 1166 (1996).

The Tucker Act, however, merely confers jurisdiction on the United States Court of Federal Claims; "'it does not create any substantive right enforceable against the United States for money damages.'" United States v. Mitchell, 445 U.S. 535, 538 (quoting United States v. Testan, 424 U.S. at 398-99), reh'g denied, 446 U.S. 992 (1980); White Mountain Apache Tribe v. United States, 249 F.3d 1364, 1372 (Fed. Cir.), reh'g denied, reh'g en banc declined (2001), aff'd, 537 U.S. 465 (2003); Cyprus Amax Coal Co. v. United States, 205 F.3d 1369, 1373 (Fed. Cir. 2000), cert. denied, 532 U.S. 1065 (2001); New York Life Ins. Co. v. United States, 118 F.3d 1553, 1555-56 (Fed. Cir. 1997), cert. denied, 523 U.S. 1094 (1998); United States v. Connolly, 716 F.2d 882, 885 (Fed. Cir. 1983) (en banc), cert. denied, 465 U.S. 1065 (1984). Individual claimants, therefore, must look beyond the jurisdictional statute for a waiver of sovereign immunity. United States v. Mitchell, 445 U.S. at 538. In order for a claim to be successful, the plaintiff "must also demonstrate that the source of law relied upon 'can fairly be interpreted as mandating compensation by the federal government for the damages sustained.'" White Mountain Apache Tribe v. United States, 249 F.3d at 1372 (quoting United States v. Mitchell, 463 U.S. 206, 216-17 (1983)); United States v. Testan, 424 U.S. at 400; Tippett v. United States, 185 F.3d 1250, 1254 (Fed. Cir. 1999) ("[T]he plaintiff must assert a claim under a separate money-mandating constitutional provision, statute, or regulation, the violation of which supports a claim for damages against the United States.") (quoting James v. Caldera, 159 F.3d 573, 580 (Fed. Cir. 1998), reh'g denied (1999)); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996), reh'g denied, reh'g en banc declined (1997); Eastport Steamship Corp. v. United States, 178 Ct. Cl. at 607, 372 F.2d at 1009.

The defendant seeks dismissal of the plaintiff's claim pursuant to RCFC 12(b)(1), arguing that the United States Court of Federal Claims lacks the authority to review the claims urged by the plaintiff. The issue presented is whether the doctrine of equitable subrogation allows U.S. Fire, the surety, to bring a complaint against the government to this court.

The plaintiff properly asserts that well-established principles of surety law, more specifically, the doctrine of equitable subrogation, give this court jurisdiction to decide the claim of a subrogee, which steps into the shoes of a defaulted government contractor. The United States Court of Appeals for the Federal Circuit is in agreement and has stated, "sureties traditionally have asserted claims against the government under the equitable doctrine of subrogation. This approach dates back at least to 1896 . . . ." Ins. Co. of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir.), reh'g denied, reh'g en banc declined (2001); see Nat'l Sur. Corp. v. United States, 118 F.3d 1542, 1545-46 (Fed. Cir. 1997) ("The surety's rights and obligations are not based on third-party beneficiary concepts, but on principles of suretyship law . . . . The Court of Claims, by whose precedent we are bound, has long recognized the surety's right to subrogation in the security held by the government."); see also Fireman's Fund Ins. Co. v. England, 313 F.3d 1344, 1351 (Fed. Cir. 2002) ("'[O]ur [Federal Circuit] case law has long established that a surety can sue the Government in the Court of Federal Claims under the non-contractual doctrine of equitable subrogation.'") (quoting Admiralty Constr. by Nat'l Am. Ins. Co. v. Dalton, 156 F.3d 1217, 1221 (Fed. Cir. 1998)); Balboa Ins. Co. v. United States, 775 F.2d 1158, 1163 (Fed. Cir. 1985) ("[W]e hold

that both the Claims Court and this court have jurisdiction to hear the claim of a Miller Act surety against the United States for funds allegedly improperly disbursed to a contractor.").

While the doctrine of subrogation has been recognized and applied for over a century as a basis for jurisdiction in this court, the defendant, nonetheless, questions its continued validity following the decision in the United States Supreme Court case of Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 263 (1999), and the decision in Ins. Co. of the West v. United States, 243 F.3d 1367. The court finds no basis for the defendant's position. The issue before the Supreme Court in Blue Fox was not the viability of the doctrine of equitable subrogation for sureties. In fact, in Blue Fox, the Department of the Army had not required a Miller Act Bond, and no surety was involved in the Blue Fox case. The issue presented was whether a subcontractor's attempt to establish a lien directly against government funds is barred by sovereign immunity. Dep't of the Army v. Blue Fox, Inc., 525 U.S. at 256-57. The subcontractor, Blue Fox, had not been compensated for its work on an Army contract completed for an insolvent prime contractor, Verdan, who had hired Blue Fox. After Blue Fox notified the Army that it had not been fully paid by Verdan, the Army, nevertheless, paid Verdan for the work completed. The Army eventually terminated the contract with Verdan due to failure to perform. After Blue Fox concluded that it could not collect from the prime contractor, Blue Fox sued the government, directly, for the balance on its contract. The doctrine of equitable subrogation and the Miller Act were found to be inapplicable in Blue Fox because "the Miller Act by its terms only gives subcontractors the right to sue on the surety bond posted by the prime contractor, not the right to recover their losses directly from the Government." Id. at 264. In sum, the Supreme Court's decision in Blue Fox does not change the existing and long-standing suretyship law since the scope of Blue Fox addressed the rights of a subcontractor, not a surety. Id. at 263.

Following the Blue Fox decision, the United States Court of Appeals for the Federal Circuit wrote: "We hold that the Supreme Court's decision in Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255, 119 S.Ct. 687, 142 L.Ed.2d 718 (1999), did not upset the long-standing rule that such a suit [based on subrogation] is not barred by the doctrine of sovereign immunity, and that this case is governed by the Supreme Court's earlier decision in United States v. Aetna Cas. & Sur. Co., 338 U.S. 366, 70 S.Ct. 207, 94 L.Ed. 171 (1949)." Ins. Co. of the West, 243 F.3d at 1369. In the Federal Circuit's view, in Blue Fox the "Supreme Court upheld 'the long settled rule' that sovereign immunity bars subcontractors from recovering from the government when general contractors become insolvent.'" Ins. Co. of the West, 243 F.3d at 1371 (citing Dep't of the Army v. Blue Fox, Inc., 525 U.S. at 264)).

The defendant also cites the Shook and Centron cases as examples of courts not granting jurisdiction to a creditors suit. See Shook v. United States, 26 Cl. Ct. 1477, 1485 n.3 (1992); Centron Corp. v. United States, 218 Ct. Cl. 1, 7-8, 585 F.2d 982, 985 (1978);. The creditors in these cases were a creditor of a government contractor in the traditional sense and a receiver appointed for an insolvent government contractor who failed to pursue its administrative remedies. Neither case involved a surety. Rights of creditors, subcontractors,

and sureties differ because Miller Act bonds, including the performance bond at issue in this case, allow the surety to subrogate the rights of the defaulting prime contractor. Furthermore, there are rights running directly between the surety and the government when the performance bond is called upon, whereas there is no contractual relationship or obligation running directly between the subcontractor and the government. In this regard, the Federal Circuit in Balboa stated, "[i]n contrast to a subcontractor, . . . [i]f the *surety* fails to perform, the Government can sue it on the bonds." Balboa Ins. Co. v. United States, 775 F.2d at 1160. Through equitable subrogation, the right to sue should be reciprocal.

The defendant also argues that U.S. Fire cannot bring suit because Tri-Gems could not bring suit for the government's alleged overpayments to Tri-Gems. The defendant cites Sentry Insurance for this proposition, which stated that a surety "cannot, through subrogation, acquire rights not possessed by the one through whom the subrogee claims a right." Sentry Ins. A Mut. Co. v. United States, 12 Cl. Ct. 320, 322 (1987). Based on the quoted Sentry Insurance language, the defendant maintains that because Tri-Gems could not sue for overpayment on the contract, U.S. Fire also is barred from such a suit. This position is incorrect. As the United States Court of Appeals for the Federal Circuit stated in Ins. Co. of the West, it has "been well-established in this court that a surety could sue the United States and recover not only any retainage but also any amounts paid by the United States to the contractor after the surety had notified the government of default by the contractor under the bond." Ins. Co. of the West, 243 F.3d at 1370-71 (citing Balboa Ins. Co. v. United States, 775 F.2d at 1161-63; Nat'l Sur. Corp. v. United States, 118 F.3d at 1545; and Transamerica Ins. Co. v. United States, 989 F.2d 1188, 1194-95 (Fed. Cir.), reh'g denied, reh'g en banc declined (1993)).

The Federal Circuit in Ins. Co. of the West continued:

> waivers of sovereign immunity applicable to the original claimant are to be construed as extending to those who receive assignments, whether voluntary assignments or assignments by operation of law, where the statutory waiver of sovereign immunity is not expressly limited to waivers for claims asserted by the original claimant. Neither the Federal Tort Claims Act nor the Tucker Act is limited to claims asserted by the original claimant.

Ins. Co. of the West, 243 F.3d at 1373. To bring a claim against the government, the surety must "first settle[ ] the amounts due to the subcontractors and then, under the doctrine of equitable subrogation, step[ ] into the shoes of the contractors and [bring] suit directly against the Government." Ins. Co. of the West v. United States, 55 Fed. Cl. 529, 534 (2003). Once this occurs, however, "[n]o act here limits the right of subrogees to bring suit against the government, and thus sovereign immunity presents no barrier to such an action." Ins. Co. of the West, 243 F.3d at 1375.

## CONCLUSION

The defendant's motion to dismiss the complaint on the grounds that this court does not possess jurisdiction over claims brought by sureties under the doctrine of subrogation fails. The United States Supreme Court case of Dep't of the Army v. Blue Fox, Inc., 525 U.S. 255 (1999), does not rescind the long-standing doctrine of equitable subrogation as a basis for a surety to bring suit against the United States, as indicated by the United States Court of Appeals for the Federal Circuit in Ins. Co. of the West v. United States, 243 F.3d at 1369. Therefore, the defendant's motion to dismiss the complaint for lack of jurisdiction pursuant to RCFC 12(b)(1) is **DENIED**.

**IT IS SO ORDERED.**

/s/Marian Blank Horn
**MARIAN BLANK HORN**
**Judge**