IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 03-2811C<br>(Judge Horn) |

JOINT STIPULATIONS OF FACT

Pursuant to the Court's order dated May 19, 2005, the parties respectfully submit the following joint stipulation of fact:

**Relationship Between U.S. Fire Ins. Co. And Universal Bonding Co.**

1. United States Fire Insurance Company ("U.S. Fire") is in the business of providing surety bonds at the request of construction companies.

2. Universal Bonding Company was authorized by U.S. Fire to issue bonds on U.S. Fire paper based upon the reinsurance treaties, and to administer claims against U.S. Fire bonds.

**Contract Formation And Modification**

3. On October 26, 1995, the United States, acting through the Department of the Air Force ("Air Force"), and Tri-Gems Builders, Inc. ("Tri-Gems" or "original contractor") entered into a contract ("the contract").

4. The contract generally required Tri-Gems to renovate an electric distribution system by removing overhead power lines and by burying these lines in conduits underground.

5. The initial price of the contract was $1,200,000 with a not to exceed amount of $1,202,800.

6. The contract incorporated FAR 52.232-5. *DOJ 01157 (contract p. 16) (item I-387).*

7. In relevant part, FAR 52.232-5 provides:

> (b) *Progress payments.* The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer.
>
> * * *
>
> (f) *Title, liability, and reservation of rights.* All material and work covered by progress payments made shall, at the time of payment, become sole property of the Government, but this shall not be construed as ---
>
> (1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or
>
> (2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

8. The contract also incorporated FAR 52.246-12. *DOJ 01147 (contract p. 6) (item I-387).*

9. In relevant part, FAR 52.246-12 provides:

> (b) The Contractor shall maintain an adequate inspection system and perform such inspections as will ensure that the work performed under the contract conforms to the contract requirements. The Contractor shall maintain complete inspection records and make them available to the Government. All work shall be conducted under the general direction of the Contracting Officer and is subject to Government inspection and test at all places and at all reasonable times before acceptance to ensure strict compliance with the terms of the contract.
>
> (c) Government inspects and tests are for the sole benefit of the Government and do not –

> (1) Relieve the Contractor of responsibility for providing adequate quality control measures;
> (2) Relieve the Contractor of responsibility for damage to or loss of the material before acceptence;
> (3) Constitute or imply acceptance; or
> (4) Affect the continuing rights of the Government after acceptance of the completed work under paragraph (i) below.

FAR 52.246-12.

10. The contract required Tri-Gems to obtain a performance bond and a payment bond. *DOJ 01151 (contract p. 10).*

11. Tri-Gems obtained a performance bond and a payment bond for this contract.

12. U.S. Fire issued the required performance and payments bonds on behalf of Tri-Gems.

13. While Tri-Gems was performing the contract, the contract was modified five times.

14. On April 9, 1996, Tri-Gems and the Air Force agreed to modification number P0001. This modification generally changed details about the scope of the work and allowed additional time for Tri-Gems to complete the contract. This modification increased the price of the contract by $104,236. *DOJ 00604.*

15. On May 20, 1996, Tri-Gems and the Air Force agreed to modification number P0002. This modification changed the location of some light posts from one side of a street to the other. This modification did <u>not</u> affect the amount of the contract. *DOJ 00617.*

16. On March 12, 1997, Tri-Gems and the Air Force agreed to modification number P00003. This modification incorporated addendum number 05 and addendum number 06. These addendum made several technical changes to the scope of the work, including allowing for cutting the driveways to install conduit. This modification increased the price of the contract by $177,874. The as-modified price of the contract was $1,482,110 with a not to exceed price of $1,484,910. *DOJ 00621.*

17. On March 20, 1997, Tri-Gems and the Air Force agreed to modification number P00004. This modification incorporated addendum number 4, dated July 16, 1996, which generally revised the work necessary on certain poles. This modification decreased the price of the contract by $714.00. The as-modified price of the contract was $1,481,396 with a not to exceed price of $1,484,196. *DOJ 00631.*

18. On October 15, 1997, the Air Force issued modification number P00005. This modification extended the time for completing the contract 60 days and set the date for completing the contract as December 15, 1997. This modification also stated that liquidated damages would be imposed starting December 16, 1997. This modification did not affect the price of the contract. *DOJ 00635.*

19. The net effect of modifications numbers P00001 through and including P00005 was to increase the contract by a total of $281,386. After these modifications, the total price of the contract was $1,481,396.

**Contract Performance**

20. Tri-Gems began performing the contract in March 1996. *DOJ 01261.*

21. The Air Force assigned certain people to monitor and to inspect the work performed by Tri-Gems. In sequence, these people were Sean Pederson, Matthew Ward, and Ricardo "Richie" Rodriguez. Mr. Pederson, Mr. Ward and Mr. Rodriguez were construction contract inspectors ("inspectors" or "CCI").

22. Periodically, Tri-Gems submitted requests for payments to the contracting office. In these requests for payment, Tri-Gems stated how much progress it had made on the job and certified the accuracy of its information.

23. Approximately every two weeks, the inspector submitted a report stating how much progress Tri-Gems completed.
When the contracting office received requests for payments, the contract administrator, usually Ms. Beth Ann Mendell, assessed whether the request for payment should be approved. Ms. Mendell compared the progress report prepared by Tri-Gems to the progress report prepared by the Government's inspector. When the progress reports matched, Ms. Mendell recommended that the contracting officer approve the payment request. <u>see also</u> *DOJ 01151 (contract p. 10) (requiring submission of progress reports).*

24. The contracting officer approved several requests for payment submitted by Tri-Gems and Tri-Gems was consequently paid.

25. The last payment to Tri-Gems was made on or about December 2, 1997 in the amount of $31,899.77. *DOJ 00267,*

Including this payment, the Air Force paid Tri-Gems $1,285,553.14.

**Department of Labor Withholdings**

26. By letter dated March 12, 1998, the Department of Labor amended a charging letter, asserting that Tri-Gems violated various wage and hours laws. *DOJ 00155*.

27. By letter dated April 27, 2000, the Department of Labor informed the contracting officer that it found that Tri-Gems violated various wage and hour laws and demanded that the contracting officer release certain funds to it. *DOJ 00003.*

28. On May 31, 2000, the contracting officer acknowledged the demand for money by the Department of Labor. The contracting officer informed U.S. Fire Ins. Co. about the demand from the Department of Labor. *DOJ 01383, 01384.*

29. After notifying U.S. Fire Ins. Co. About the demand from the Department of Labor, the contracting officer paid the Department of Labor a total of $61,105.34. *DOJ 00001, 00006, 00267.*

**Show Cause, Liquidated Damages And Termination For Default**

30. On September 5, 1997, the contracting officer sent Tri-Gems a notice to show cause as to why the contract should not be terminated for default. The contracting officer also suggested that the Government would impose liquidated damages starting May 8, 1997. A copy of this notice was received by U.S. Fire Ins. Co. *USF 00356.*

31. Modification number P00005, issued October 15, 1997, stated that liquidated damages would be imposed starting December 16, 1997. *DOJ 00635.*

32. On December 12, 1997, the contracting officer sent Tri-Gems another notice to show cause as to why the contract should not be terminated for default. A copy of this notice was sent to U.S. Fire Ins. Co. *DOJ 00145.*

33. On January 7, 1998, the contracting officer informed Tri-Gems that liquidated damages in the amount of $90 per day were being imposed. *DOJ 00149.*

34. In total, the Air Force imposed $36,360 in liquidated damages upon Tri-Gems. *DCAA-wp00282*

35. On May 19, 1998, Mr. Steven Lyman prepared a report in which he stated, among other things, that Tri-Gems completed 60 percent of the work and of that 60 percent, one-third needed to be reworked. *USF 00471.*

36. The contracting office at Maguire Air Force Base recommended that Commander Smith terminate the contract of Tri-Gems Builders, Inc. for default. Commander Smith agreed with this recommendation and terminated the contract. Commander Smith did not handle the day-to-day administration of the contract. In addition, Commander Smith does not presently recollect any of the information presented to him for evaluation.[1]

---

[1] The parties agreed to this stipulation to avoid the time, expense and inconvenience of attempting to depose Mr. Smith.

37. On February 24, 1999, the contracting officer notified Tri-Gems that the Air Force terminated the contract for default. U.S. Fire Ins. Co. received a copy of this notice. *DOJ 00437.*

38. Acting through its attorney, Tri-Gems filed an appeal of the decision to terminate the contract for default with the Armed Services Board of Contract Appeals on May 19, 1999. *DOJ 00186.*

39. Tri-Gems filed a petition for bankruptcy on June 11, 1999. *DCAA-wp00003 at page 4.*

40. On February 1, 2000, the Armed Services Board of Contract Appeals dismissed Tri-Gems case based upon the representation of the trustee for the estate of Tri-Gems that the trustee did not intent to prosecute the case. *DOJ 01380.*

41. On May 23, 2000, the contracting officer sent a letter to U.S. Fire Ins. Co. In this letter, the contracting officer, among other things, requested that the surety supply the name of the replacement contractor to complete performance. The contracting officer also invited U.S. Fire Ins. Co. to visit the site. *DOJ 00415.*

**Takeover Agreement And Completion Contract**

42. U.S. Fire Ins. Co. requested information about the status of performance completed by Tri-Gems. The Air Force provided this information, including Mr. Lyman's report.

43. U.S. Fire Ins. Co. retained Mr. Michael Spinelli to assist it.

44. The Air Force invited U.S. Fire Ins. Co. to inspect the work performed by Tri-Gems. *DOJ 00415.*

45. On August 4, 2000, Mr. Spinelli issued an invitation for bids to approximately six different companies. This invitation for bids included Mr. Lyman's May 19, 1998 report. *DOJ 00522.*

46. On December 19, 2000, U.S. Fire Ins. Co. and Eastern Construction & Electric, Inc. entered into a "Completion Agreement." *DOJ 00638.* U.S. Fire agreed to pay Eastern $939,000. *Id. at paragraph 7.*

47. On January 29, 2001, U.S. Fire Ins. Co. and the Air Force entered into a takeover agreement. *DOJ 00327.* On March 22, 2001, the parties agreed to modify the contract to incorporate the takeover agreement. *DOJ 01209.*

48. In the takeover agreement, the Air Force agreed that the sums that had not previously been paid to Tri-Gems were available to complete performance. *DOJ 00327, ¶ 2.* The Air Force generally agreed to pay U.S. Fire "the balance of the contract price unpaid at the time of this Agreement." *DOJ 00327, ¶ 5.*

49. The takeover agreement also provides that U.S. Fire was reserving all its rights. *DOJ 00327, ¶ 9.*

**Eastern Electric and Completion of Contract**

50. Eastern Electric completed work pursuant to the completion agreement by June 2002. *DOJ 01195, USF 00467*

51. U.S. Fire Ins. Co. paid Eastern Electric $930,000. *Plaintiff's Answer to Interrogatory 6.*

52. After Eastern Electric completed the work required under the contract, the Air Force paid to U.S. Fire the balance of the contract price unpaid at the time of the takeover agreement. *DOJ 01193, 01194.*

**<u>Efforts By U.S. Fire To Collect Compensation</u>**

53. In 1997, Billows Electric Supply Co. Inc. filed a lawsuit against Tri-Gems Builders, Inc. and U.S. Fire Ins. Co. Initially, Billows filed this lawsuit in New Jersey state court, docket number L-4944-97. *USF 00593.*

54. In November 1997, Billows dismissed its action pending in state court and filed an action against Tri-Gems and U.S. Fire in the United States District Court for the District of New Jersey, docket number 97cv5119(SMO). *USF 00586.*

55. In its lawsuits, Billows claimed that it performed work and/or supplied materials for Tri-Gems on this project and that Tri-Gems did not pay for that work and/or materials. Billows sought $411,869.10 in principal plus interest, attorneys' fees, and costs. *USF* 00619.

56. In November 1998, Billows filed a motion for partial summary judgment against both Tri-Gems and U.S. Fire Ins. Co. *USF 00502.*

57. In December 1998, U.S. Fire Ins. Co. filed a cross-claim (against Tri-Gems) and a third party complaint against Gothrie Short, Willie Mae Short, Jason D. Griffin, and Lois D.

Griffin (the individuals who agreed to indemnify U.S. Fire Ins. Co. for any losses caused by the surety issuing bonds to Tri-Gems). *USF 00479*.

58. On March 31, 1999, the district court in New Jersey entered a judgment in favor of Billows against Tri-Gems and U.S. Fire Ins. Co. The district court entered judgment against Tri-Gems in the amount of $411,869.10. *USF 00616, USF 01033*.

59. On June 11, 1999, Tri-Gems filed for bankruptcy. *USF 01025.* The bankruptcy court for the District Court of New Jersey assigned docket number 99-15486(GMB). *USF 01268*

60. In November 1999, U.S. Fire Ins. Co. filed a motion for summary judgment on its cross-claim and third-party complaint. *USF 00735*. U.S. Fire Ins. Co. sought $1,624,248.19. Of this amount, approximately one-half ($800,000) was attributed by U.S. Fire Ins. Co. to its reserves for performance bond claims made by the Air Force at McGuire Air Force Base. *USF 01645*.

61. On October 12, 2000, the district court in New Jersey granted the motion for summary judgment filed by U.S. Fire Ins. Co. against the individual indemnitors, including the Griffins. *USF 01325.*

62. Although the district court granted the motion for summary judgment, the district court did not enter a judgment against the indemnitors because all the indemnitors filed for bankruptcy. *USF 01325, USF 00971..*

63. On February 15, 2000, the Griffins filed for bankruptcy under chapter 7 in the bankruptcy court for the District Court of

New Jersey. The bankruptcy court assigned docket number 00-11162(GMB). *USF 00825* ¶ 18

64. U.S. Fire Ins. Co. was a creditor in the bankruptcy proceeding. The Griffins owed U.S. Fire Ins. Co. $1,624,248.19. *USF 01321, USF 00825.*

65. U.S. Fire Ins. Co. agreed to release its claim against the Griffins in exchange for payment of $5,000. *USF 01307.* The Griffins paid U.S. Fire Ins. Co. $5,000. *USF 01307.*

66. In January 2001, U.S. Fire Ins. Co. and the Griffins filed a joint dismissal with prejudice, ending the adversary proceeding in the Griffins' bankruptcy proceeding. *USF 01304.*

67. On March 15, 2000, Gothrie Short, Jr. and Willie Mae Short filed a petition for bankruptcy under chapter 7. *USF 00921, 00970.* The bankruptcy court for the District Court of New Jersey assigned docket number 00-12131(GMB). *USF 01443.*

68. U.S. Fire Ins. Co. was listed as a creditor. *USF 00935.*

69. U.S. Fire did not recover any compensation from the Shorts. *Universal Bonding payment / collection registry.*

70. In connection with its recovery efforts, U.S. Fire paid its counsel, Starr, Gern, Davison & Rubin more than $25,000. *Universal Bonding payment / collection registry.*

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

DAVID C. DREIFUSS
Dreifuss, Bonacci &
Parker, LLP
26 Columbia Turnpike
Florham Park, NJ 07932
Tele: (973) 514-1414
Fax: (973) 514-5959

Attorney for Plaintiff
dated: October 3, 2005

s/ Christian J. Moran
CHRISTIAN J. MORAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant