IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-2811C (Judge Horn) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S BRIEF REGARDING GOVERNMENT'S OBLIGATION TO A SURETY

Pursuant to this Court's order during the pre-trial conference on October 6, 2005, defendant, the United States, respectfully submits this brief regarding the Government's duty owed to a surety. Controlling precedent establishes that under the facts of this case, the Government owes no duty to protect the surety. As will be set forth in more detail below, U.S. Fire Ins. Co. does not fall within circumstances that the Court of Appeals for the Federal Circuit has recognized for presenting a claim for equitable subrogation. Thus, U.S. Fire Ins. Co. cannot recover any compensation from the United States as a matter of law.

Preliminarily, it is important to establish what U.S. Fire Ins. Co. is not claiming. Although U.S. Fire Ins. Co. and the United States, acting through the Department of the Air Force, entered into a takeover agreement, U.S. Fire Ins. Co. is not asserting that the United States breached the takeover agreement. See Joint Stipulations of Fact, dated October 3, 2005, ¶ 52 (stipulating that the United States paid the contract balance to

U.S. Fire Ins. Co.); see also Amended Complaint, dated April 8, 2004 (failing to assert a breach of takeover agreement).

U.S. Fire Ins. Co. also cannot assert any claims based upon the contract between the United States and Tri-Gems Builders, Inc., the original contractor. There is no contract or privity of contract between the Government and a surety. Insurance Co. of the West v. United States, 243 F.3d 1367, 1370 (Fed. Cir. 2001)(citing Ransom v. United States, 900 F.2d 242, 244-45 (Fed. Cir. 1990); Admiralty Constr., Inc. v. Dalton, 156 F.3d 1217, 1220-21 (Fed. Cir. 1998)). In denying our motion to dismiss, this Court, itself, recognized that U.S. Fire Ins. Co. was not presenting a claim based upon breach of contract. United States Fire Insurance Company v. United States, 61 Fed. Cl. 494, 499 (2004).

Rather than pursue any right given to it by contract, U.S. Fire Ins. Co. is pursuing a claim based upon “equitable subrogation,” a right, to the extent it exists, derived from its status as a surety. Consistent with their role, sureties possess limited rights to sue the United States. The purpose of a surety agreement is "simply to insure completion of the [G]overnment's project . . . at the contract price." Westech Corp. v. United States, 20 Cl. Ct. 745, 751 (1990)(citing Trinity Universal Ins. Co. v. United States, 382 F.2d 317, 321 (5th Cir. 1967). “By definition and agreement, the surety protects the government’s

interest, not the other way around.” Fireman’s Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990).

In Insurance Company of the West, the court of appeals defined the waiver of sovereign immunity found in the Tucker Act insofar as it relates to a surety. The scope of that waiver was based upon the conclusion that "a subrogee, after stepping into the shoes of a government contractor, may rely on the waiver of sovereign immunity in the Tucker Act and bring suit against the United States." Insurance Company of the West, 243 F.3d at 1375 (emphasis added). The Court stated also that the subrogee, as an assignee by operation of law, has "the same right[s]" as the Government contractor, "with its advantages and disadvantages." Id. at 1374 (emphasis added). Here, the claim of U.S. Fire Ins. Co. — that the United States paid Tri-Gems an excessive amount — is outside of the scope of the waiver of sovereign immunity. According to Insurance Co. of the West, U.S. Fire Ins. Co. possesses the “same rights” as Tri-Gems. However, Tri-Gems could not assert a claim that it received an excessive amount of money.

Before the decision in Insurance Co. of the West, the United States Court of Appeals for the Federal Circuit recognized only two limited situations in which the surety may present a claim based upon an alleged overpayment. Neither of these instances are present here. First, the Government can become a “stakeholder” and owe some duty to the surety after the surety

notifies the Government to stop paying the prime contractor. Second, the surety may rely upon specific promises made by the Government in the contract to limit payments to the prime contractor.

First, the case law demonstrates that the Government may owe some duty to the surety after the surety notifies the Government not to pay the prime contractor. See e.g., Fireman's Fund Insurance Company v. United States, 909 F.2d 495, 499 (Fed. Cir. 1990) ("only notice by the surety triggers the government's equitable duty"); Great American Ins. Co. v. United States, 203 Ct. Cl. 592, 599, 492 F.2d 821 (1974) ("the Government will be liable to the surety if, after due notification of the claims of laborers and materialmen, it wrongfully pays the final contract payment to the contractor"); United States Fidelity & Guar. Co. v. United States, 201 Ct. Cl. 1, 7-8, 475 F.2d 1377 (1973) ("when the United States is in the position of a stakeholder, it is not free simply to pay the contractor when the surety has given adequate notice of other competing claims to the fund"); Home Indem. Co. v. United States, 180 Ct. Cl. 173, 376 F.2d 890 (1967) (surety may be able to recover funds already paid if the disbursement was improperly made, but only after notice to the government). Decisions from this Court (or the Claims Court) also recognize that notice is a prerequisite to any Government duty. See, e.g., American Insurance Co. v United States, 67 Fed.

Cl. 151 (2004) (Government did not owe a contractual duty to surety not to release funds to defaulting contractor and surety's right to equitable subrogation never attached where it failed to notify contracting agency to stop making payments to contractor); Westchester Fire Ins. Co. v. United States, 52 Fed. Cl. 567 (2002) (failure of surety to notify Government to withhold progress payments, even where Government was aware of contractor's deficient performance, Government's equitable duty was not triggered); Hartford Fire Ins. Co. v. United States, 40 Fed. Cl. 520, 522-23 (1998); National Surety Corp. v. United States, 31 Fed. Cl. 565, 578 (1994)(without notice from surety, Government had no equitable basis for discontinuing payments to contractor); Reliance Insurance Company v. United States, 27 Fed. Cl. 815, 827 (1993)(before any obligation arises to withhold or to divert funds, the Government must be notified that the surety believes the contractor is in default and cannot complete the contract)(quoting Ransom v. United States, 17 Cl. Ct. 263, 272 (1989), aff'd, 900 F.2d 242 (Fed. Cir. 1990)).

Here, no evidence demonstrates that U.S. Fire Ins. Co. ever notified the Air Force to stop paying Tri-Gems. Thus, U.S. Fire cannot rely upon this line of cases to establish the existence of a duty.

The second circumstance in which the Federal Circuit has recognized some duty running from the Government in favor of the

surety occurs when the surety can identify a specific contract provision dictating that the Government not make the payment at issue. See National Surety Corp. v. United States, 118 F.3d 1542 (Fed. Cir. 1997). In National Surety, the Federal Circuit held that the Government was liable to the surety for the improper release of the retainages, even though it had not received formal notice of the default, where the contract required that such funds be retained until the completion of the contract. National Surety, 118 F.3d at 1543-44. In National Surety, the underlying contract provided that the contractor "shall have 10 percent retainage withheld." Id.

In its specificity, this mandatory language differs from the language used in the underlying contract between the Air Force and Tri-Gems. We understand that U.S. Fire Ins. Co. will point to FAR 52.232-5, which was incorporated into the contract. See Joint Stipulations of Fact, dated October 3, 2005, ¶ 7. In pertinent part, this regulation states:

> (b) *Progress payments.* The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer.

This language is not sufficient to create a duty running from the Air Force to the surety.

The terms in this case are comparable to the terms of the

underlying contract in American Ins. Co. v. United States, 62 Fed. Cl. 151 (2004) (granting Government's motion for summary judgment). In that case, the contract between the Government and its contractor, G & C Enterprises, Inc., provided that "'[t]he Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer.'" Id., at 157. The Court noted that this language did not restrict the contracting officer's discretion to pay for allegedly defective work. Id.

Because the contract in this case uses the verbatim language as the contract in American Ins. Co., the outcome should be the same. This Court should recognize that the contract between the Air Force and Tri-Gems did not restrict the contracting officer's discretion in making payment to Tri-Gems and, consequently, did not create any obligation to protect the interest of U.S. Fire Ins. Co.

If in fact the Air Force did pay Tri-Gems an unreasonable amount of money (a fact that we dispute), U.S. Fire Ins. Co. possesses a remedy. U.S. Fire Ins. Co. may pursue an action against Tri-Gems because U.S. Fire Ins. Co. had a contractual relationship with Tri-Gems. In addition, U.S. Fire Ins. Co. obtained, in the general indemnity agreement, a promise from four individuals that they would reimburse U.S. Fire Ins. Co. for any losses flowing from the issuance of the performance bond.

Clearly, to the extent that there were any overpayment, the entities that received the overpayment (Tri-Gems and its owners) should compensate U.S. Fire Ins. Co. The United States should not have to pay twice.

For these reasons, the United States does not owe any duty to U.S. Fire Ins. Co.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner by James M. Kinsella
DONALD E. KINNER
Assistant Director

s/ Christian J. Moran
CHRISTIAN J. MORAN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit, 8th floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6299
Fax: (202) 514-7969

Attorneys for Defendant

Of Counsel:

CHRISTOPHER COLE
Attorney
Department of the Air Force
AFSLA/JACN
1501 Wilson Boulevard, Suite 606
Arlington, VA 22209-2403

October 14, 2005