IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY<br><br>Plaintiff,<br><br>v.<br><br>THE UNITED STATES,<br><br>Defendant. | No. 03-2811C<br>(Judge Horn) |

REVISED JOINT STIPULATIONS OF FACT

Pursuant to the Court's order dated May 19, 2005, the parties respectfully submit the following joint stipulation of fact. In doing so, the parties have combined into one document stipulations of fact previously filed.

**Relationship Between U.S. Fire Ins. Co. And Universal Bonding Co.**

1. United States Fire Insurance Company ("U.S. Fire") is in the business of providing surety bonds at the request of construction companies.

2. Universal Bonding Company was authorized by U.S. Fire to issue bonds on U.S. Fire paper based upon the reinsurance treaties, and to administer claims against U.S. Fire bonds.

**Contract Formation And Modification**

3. On October 26, 1995, the United States, acting through the Department of the Air Force ("Air Force"), and Tri-Gems Builders, Inc. ("Tri-Gems" or "original contractor") entered into a contract ("the contract").

4. The contract generally required Tri-Gems to renovate an electric distribution system by removing overhead power lines and by burying these lines in conduits underground.

5. The initial price of the contract was $1,200,000 with a not to exceed amount of $1,202,800.

6. The contract incorporated FAR 52.232-5. JX 2 Bates 31 (contract p. 16) (item I-387). (contract p. 16) (item I-387).

7. In relevant part, FAR 52.232-5 provides:

> (b) Progress payments. The Government shall make progress payments monthly as the work proceeds, or at more frequent intervals as determined by the Contracting Officer, on estimates of work accomplished which meets the standards of quality established under the contract, as approved by the Contracting Officer.
>
> * * *
>
> (f) Title, liability, and reservation of rights. All material and work covered by progress payments made shall, at the time of payment, become sole property of the Government, but this shall not be construed as ---
>
> (1) Relieving the Contractor from the sole responsibility for all material and work upon which payments have been made or the restoration of any damaged work; or
>
> (2) Waiving the right of the Government to require the fulfillment of all of the terms of the contract.

8. The contract also incorporated FAR 52.246-12. JX 2 Bates 21 (contract p. 6) (item I-387).

9. In relevant part, FAR 52.246-12 provides:

> (b) The Contractor shall maintain an adequate inspection system and perform such inspections as will ensure that the work performed under the contract conforms to the contract requirements. The Contractor shall maintain complete inspection records and make them available to the Government. All work shall be conducted under the general direction of the Contracting Officer and is subject to Government inspection and test at all places and at all reasonable times before acceptance to ensure strict compliance with the terms of the contract.
>
> (c) Government inspects and tests are for the sole benefit of the Government and do not —

> (1) Relieve the Contractor of responsibility for providing adequate quality control measures;
> (2) Relieve the Contractor of responsibility for damage to or loss of the material before acceptence;
> (3) Constitute or imply acceptance; or
> (4) Affect the continuing rights of the Government after acceptance of the completed work under paragraph (i) below.

FAR 52.246-12.

10. The contract required Tri-Gems to obtain a performance bond and a payment bond. JX 2 Bates 000025 (contract p. 10).

11. Tri-Gems obtained a performance bond and a payment bond for this contract.

12. U.S. Fire issued the required performance and payments bonds on behalf of Tri-Gems.

13. While Tri-Gems was performing the contract, the contract was modified five times.

14. On April 9, 1996, Tri-Gems and the Air Force agreed to modification number P0001. This modification generally changed details about the scope of the work and allowed additional time for Tri-Gems to complete the contract. This modification increased the price of the contract by $104,236. JX 50 Bates 000442.

15. On May 20, 1996, Tri-Gems and the Air Force agreed to modification number P0002. This modification changed the location of some light posts from one side of a street to the other. This modification did <u>not</u> affect the amount of the contract. JX 51 Bates 000455.

16. On March 12, 1997, Tri-Gems and the Air Force agreed to modification number P00003. This modification incorporated addendum number 05 and addendum number 06. These addendum made several technical changes to the scope of the work, including allowing for cutting the driveways to install conduit. This modification increased the price of the contract by $177,874. The as-modified price of the contract was $1,482,110 with a not to exceed price of $1,484,910. JX 52 Bates 000459.

17. On March 20, 1997, Tri-Gems and the Air Force agreed to modification number P00004. This modification incorporated addendum number 4, dated July 16, 1996, which generally revised the work necessary on certain poles. This modification decreased the price of the contract by $714.00. The as-modified price of the contract was $1,481,396 with a not to exceed price of $1,484,196. JX 53 Bates 000469.

18. On October 15, 1997, the Air Force issued modification number P00005. This modification extended the time for completing the contract 60 days and set the date for completing the contract as December 15, 1997. This modification also stated that liquidated damages would be imposed starting December 16, 1997. This modification did not affect the price of the contract. JX 54 Bates 000473.

19. The net effect of modifications numbers P00001 through and including P00005 was to increase the contract by a total of $281,386. After these modifications, the total price of the contract was $1,481,396.

**<u>Contract Performance</u>**

20. Tri-Gems began performing the contract in March 1996. PX 103 Bates 000574.

21. The Air Force assigned certain people to monitor and to inspect the work performed by Tri-Gems. In sequence, these people were Sean Pederson, Matthew Ward, and Ricardo "Richie" Rodriguez. Mr. Pederson, Mr. Ward and Mr. Rodriguez were construction contract inspectors ("inspectors" or "CCI").

22. Periodically, Tri-Gems submitted requests for payments to the contracting office. In these requests for payment, Tri-Gems stated how much progress it had made on the job and certified the accuracy of its information.

23. Approximately every two weeks, the inspector submitted a report stating how much progress Tri-Gems completed.
When the contracting office received requests for payments, the contract administrator, usually Ms. Beth Ann Mendell, assessed whether the request for payment should be approved. Ms. Mendell compared the progress report prepared by Tri-Gems to the progress report prepared by the Government's inspector. When the progress reports matched, Ms. Mendell recommended that the contracting officer approve the payment request. <u>see also</u> see also JX 2 Bates 000025(contract p. 10) (requiring submission of progress reports).

24. The contracting officer approved several requests for payment submitted by Tri-Gems and Tri-Gems was consequently paid.

25. The last payment to Tri-Gems was made on or about December 2, 1997 in the amount of $31,899.77. DX 289 Bates 001646. Including this payment, the Air Force paid Tri-Gems $1,285,553.14.

**Department of Labor Withholdings**

26. By letter dated March 12, 1998, the Department of Labor amended a charging letter, asserting that Tri-Gems violated various wage and hours laws. DX 243 Bates 001369.

27. By letter dated April 27, 2000, the Department of Labor informed the contracting officer that it found that Tri-Gems violated various wage and hour laws and demanded that the contracting officer release certain funds to it. DX 267 Bates 001421.

28. On May 31, 2000, the contracting officer acknowledged the demand for money by the Department of Labor. The contracting officer informed U.S. Fire Ins. Co. about the demand from the Department of Labor. DX 271 Bates 001429, DX 270 Bates 001428.

29. After notifying U.S. Fire Ins. Co. About the demand from the Department of Labor, the contracting officer paid the Department of Labor a total of $61,105.34. DX 279 001446, DX 289 001646.

**Show Cause, Liquidated Damages And Termination For Default**

30. On September 5, 1997, the contracting officer sent Tri-Gems a notice to show cause as to why the contract should not be terminated for default. The contracting officer also suggested that the Government would impose liquidated damages starting May

8, 1997. A copy of this notice was received by U.S. Fire Ins. Co. DX 239 Bates 001336.

31. Modification number P00005, issued October 15, 1997, stated that liquidated damages would be imposed starting December 16, 1997. JX 54 Bates 000473.

32. On December 12, 1997, the contracting officer sent Tri-Gems another notice to show cause as to why the contract should not be terminated for default. A copy of this notice was sent to U.S. Fire Ins. Co. JX 32.

33. On January 7, 1998, the contracting officer informed Tri-Gems that liquidated damages in the amount of $90 per day were being imposed. JX 32.

34. In total, the Air Force imposed $36,360 in liquidated damages upon Tri-Gems.[1]

35. On May 19, 1998, Mr. Steven Lyman prepared a report in which he stated, among other things, that Tri-Gems completed 60 percent of the work and of that 60 percent, one-third needed to be reworked. JX 39 Bates 000334.

36. The contracting office at McGuire Air Force Base recommended that Commander Smith terminate the contract of Tri-Gems Builders, Inc. for default. Commander Smith agreed with this recommendation and terminated the contract. Commander Smith did not handle the day-to-day administration of the contract. In

[1] Neither party listed the document that supports this stipulation as an exhibit. However, the amount of liquidated damages can be computed mathematically.

addition, Commander Smith does not presently recollect any of the information presented to him for evaluation.[2]

37. On February 24, 1999, the contracting officer notified Tri-Gems that the Air Force terminated the contract for default. U.S. Fire Ins. Co. received a copy of this notice. JX 39 Bates 000334.

38. Acting through its attorney, Tri-Gems filed an appeal of the decision to terminate the contract for default with the Armed Services Board of Contract Appeals on May 19, 1999.

39. Tri-Gems filed a petition for bankruptcy on June 11, 1999.

40. On February 1, 2000, the Armed Services Board of Contract Appeals dismissed Tri-Gems case based upon the representation of the trustee for the estate of Tri-Gems that the trustee did not intent to prosecute the case. DX 297.

41. On May 23, 2000, the contracting officer sent a letter to U.S. Fire Ins. Co. In this letter, the contracting officer, among other things, requested that the surety supply the name of the replacement contractor to complete performance. The contracting officer also invited U.S. Fire Ins. Co. to visit the site. DX 277 Bates 001424.

**Takeover Agreement And Completion Contract**

[2] The parties agreed to this stipulation to avoid the time, expense and inconvenience of attempting to depose Mr. Smith.

42. U.S. Fire Ins. Co. requested information about the status of performance completed by Tri-Gems. The Air Force provided this information, including Mr. Lyman's report.

43. U.S. Fire Ins. Co. retained Mr. Michael Spinelli to assist it.

44. The Air Force invited U.S. Fire Ins. Co. to inspect the work performed by Tri-Gems. DX 277 Bates 001424.

45. On August 4, 2000, Mr. Spinelli issued an invitation for bids to approximately six different companies. This invitation for bids included Mr. Lyman's May 19, 1998 report. JX 41-54.

46. On December 19, 2000, U.S. Fire Ins. Co. and Eastern Construction & Electric, Inc. entered into a "Completion Agreement." JX 55 Bates 000475. U.S. Fire agreed to pay Eastern $939,000. Id. at paragraph 7.

47. On January 29, 2001, U.S. Fire Ins. Co. and the Air Force entered into a takeover agreement. Jt. 56 Bates 000493. On March 22, 2001, the parties agreed to modify the contract to incorporate the takeover agreement. JX 57.

48. In the takeover agreement, the Air Force agreed that the sums that had not previously been paid to Tri-Gems were available to complete performance. Jt. 56 Bates 0000493, ¶ 2. The Air Force generally agreed to pay U.S. Fire "the balance of the contract price unpaid at the time of this Agreement." Id. ¶ 5.

49. The takeover agreement also provides that U.S. Fire was reserving all its rights. Id., ¶ 9.

**Eastern Electric and Completion of Contract**

50. Eastern Electric completed work pursuant to the completion agreement by June 2002.

51. U.S. Fire Ins. Co. paid Eastern Electric $930,000. Plaintiff's Answer to Interrogatory 6.

52. After Eastern Electric completed the work required under the contract, the Air Force paid to U.S. Fire the balance of the contract price unpaid at the time of the takeover agreement. DX 220 Bates 01193, 001573.

**Efforts By U.S. Fire To Collect Compensation**[3]

53. In 1997, Billows Electric Supply Co. Inc. filed a lawsuit against Tri-Gems Builders, Inc. and U.S. Fire Ins. Co. Initially, Billows filed this lawsuit in New Jersey state court, docket number L-4944-97.

54. In November 1997, Billows dismissed its action pending in state court and filed an action against Tri-Gems and U.S. Fire in the United States District Court for the District of New Jersey, docket number 97cv5119(SMO).

55. In its lawsuits, Billows claimed that it performed work and/or supplied materials for Tri-Gems on this project and that

[3] Because the parties stipulated to the series of facts regarding collection efforts by United States Fire Ins. Co., neither party included the document(s) supporting many facts in this section as an exhibit. If requested by the Court, the parties will submit the underlying documents.

In addition, docket sheets, which are publically available, from the lawsuits also support some of the facts in this section.

Tri-Gems did not pay for that work and/or materials. Billows sought $411,869.10 in principal plus interest, attorneys' fees, and costs.

56. In November 1998, Billows filed a motion for partial summary judgment against both Tri-Gems and U.S. Fire Ins. Co.

57. In December 1998, U.S. Fire Ins. Co. filed a cross-claim (against Tri-Gems) and a third party complaint against Gothrie Short, Willie Mae Short, Jason D. Griffin, and Lois D. Griffin (the individuals who agreed to indemnify U.S. Fire Ins. Co. for any losses caused by the surety issuing bonds to Tri-Gems). DX 302.

58. On March 31, 1999, the district court in New Jersey entered a judgment in favor of Billows against Tri-Gems and U.S. Fire Ins. Co. The district court entered judgment against Tri-Gems in the amount of $411,869.10.

59. On June 11, 1999, Tri-Gems filed for bankruptcy. The bankruptcy court for the District Court of New Jersey assigned docket number 99-15486(GMB).

60. In November 1999, U.S. Fire Ins. Co. filed a motion for summary judgment on its cross-claim and third-party complaint. U.S. Fire Ins. Co. sought $1,624,248.19. Of this amount, approximately one-half ($800,000) was attributed by U.S. Fire Ins. Co. to its reserves for performance bond claims made by the Air Force at McGuire Air Force Base.

61. On October 12, 2000, the district court in New Jersey granted the motion for summary judgment filed by U.S. Fire Ins.

Co. against the individual indemnitors, including the Griffins. DX 302.

62. Although the district court granted the motion for summary judgment, the district court did not enter a judgment against the indemnitors because all the indemnitors filed for bankruptcy. DX 302.

63. On February 15, 2000, the Griffins filed for bankruptcy under chapter 7 in the bankruptcy court for the District Court of New Jersey. The bankruptcy court assigned docket number 00-11162(GMB).

64. U.S. Fire Ins. Co. was a creditor in the bankruptcy proceeding. The Griffins owed U.S. Fire Ins. Co. $1,624,248.19. DX 309.

65. U.S. Fire Ins. Co. agreed to release its claim against the Griffins in exchange for payment of $5,000. The Griffins paid U.S. Fire Ins. Co. $5,000. DX 308.

66. In January 2001, U.S. Fire Ins. Co. and the Griffins filed a joint dismissal with prejudice, ending the adversary proceeding in the Griffins' bankruptcy proceeding. DX 301.

67. On March 15, 2000, Gothrie Short, Jr. and Willie Mae Short filed a petition for bankruptcy under chapter 7. The bankruptcy court for the District Court of New Jersey assigned docket number 00-12131(GMB).

68. U.S. Fire Ins. Co. was listed as a creditor.

69. U.S. Fire did not recover any compensation from the Shorts.

70. In connection with its recovery efforts, U.S. Fire paid its counsel, Starr, Gern, Davison & Rubin more than $25,000.

**Bankruptcy**

71. Tri-Gems is not a party to these proceedings and is not the real party in interest.

72. The bankruptcy filing of Tri-Gems does not result in a stay of these proceedings since it is not a party hereto.

73. None of the individual owners of Tri-Gems are parties to this litigation. Therefore, their bankruptcy filings do not cause a stay of these proceedings. They are also not the real party in interest.

**Negotiation Of Takeover Agreement**

74. On May 23, 2000, the contracting officer, Ms. Kathleen DeMito, sent a letter to United States Fire Ins. Co. In this letter, Ms. DeMito, among other things, demanded that United States Fire Ins. Co. fulfill its obligations pursuant to the performance bond. DX 271.

75. On September 8, 2000, Ms. DeMito sent a proposed takeover agreement to United States Fire Ins. Co. PX 163.

76. On September 19, 2000, Ms. DeMito sent a revised proposed takeover agreement to United States Fire Ins. Co.[4]

77. On October 20, 2000, Mr. David Dreifuss sent a letter to the Air Force that proposed certain changes to the takeover agreement. DX 312.

---

[4] The document supporting this fact was not included on any exhibit list.

78. On December 18, 2000, Ms. Denise McLane, an attorney employed by the Air Force at McGuire Air Force Base, sent Mr. Dreifuss a letter memorializing certain changes that were discussed by telephone. DX 313.

79. Also on December 18, 2000, Mr. Dreifuss sent a letter to Ms. McLane accepting those changes. DX 314.

80. On January 19, 2001, Mr. Dreifuss sent to Ms. DeMito a letter enclosing another version of the takeover agreement. PX 165.

81. Following these negotiations, United States Fire Ins. Co. and the Air Force signed the takeover agreement on January 30, 2001. JX 56.

82. The parties stipulate that the takeover agreement was drafted jointly.

83. On March 20, 2001, United States Fire Ins. Co. and the Air Force modified the original contract, which was initially between the Air Force and Tri-Gems, to incorporate the takeover agreement. JX 57.

**Testimony of Edward Baker**

84. In 2003, Mr. Baker was working as a contracting officer at McGuire Air Force Base. In that capacity, he was responsible for issuing a final decision upon a certified claim submitted by United States Fire Ins. Co.

85. In a decision dated April 30, 2003, Mr. Baker issued a final decision that denied the claim presented by United States Fire Ins. Co. JX 58.[5]

86. United States Fire Ins. Co. deposed Mr. Baker on September 29, 2005. During his deposition, Mr. Baker did not recall the basis for many of his statements in his April 30, 2003 letter.

87. In light of Mr. Baker's deposition testimony, United States Fire Ins. Co. and the United States believe that his testimony is unlikely to assist the Court in resolving the issues in this case.

**Qualifications of Mr. Spinelli and Mr. Lyman**

88. The United States stipulates that Mr. Spinelli qualifies as an expert witness in regard to his reports dated November 15, 2002 (PX 174), July 15, 2005 (PX 177) and September 30, 2005 (PX 178).

89. United States Fire Ins. Co. stipuates that Mr. Lyman qualifies as an expert witness in regard to his reports dated May 19, 1998 (DX 257) and December 10, 2004 (DX 286).

**Documents**

90. All of the Joint Exhibits, Plaintiff's exhibits and Defendants's exhibits are authentic, other than Plaintiff's exhibit no. 145. For these purposes, authenticity means that the

---

[5] The United States believes that because United States Fire Ins. Co. is not presenting a claim based upon the Contract Disputes Act, this document is not relevant. However, the United States does not otherwise contest this document's admissibility.

copies that have been Bate stamped are true copies of the original and that neither party will object to a document based upon it being a copy rather than the original.

91. All of the documents contained on the Joint Exhibit List, Plaintiff's Exhibit List and/or Defendant's Exhibit List were contained in the records either of the Government or of United States Fire Insurance Company. This is not a stipulation that they are admissible or that they are not based on hearsay. Likewise, the parties reserve all other objections, such as to relevance and/or foundation.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Donald E. Kinner
DONALD E. KINNER
Assistant Director

DAVID C. DREIFUSS
Dreifuss, Bonacci &
Parker, LLP
26 Columbia Turnpike
Florham Park, NJ 07932
Tele: (973) 514-1414
Fax: (973) 514-5959

s/ Christian J. Moran
CHRISTIAN J. MORAN
Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 307-6299
Fax: (202) 514-7969

Attorney for Plaintiff
dated: October 23, 2005

Attorneys for Defendant